**Revised January 27, 1999**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 97-50780**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**WILLIAM R. CROW,**

**Defendant-Appellant.**

_____

Appeals from the United States District Court
for the Western District of Texas
_____

January 4, 1999

Before REYNALDO G. GARZA, STEWART and PARKER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

### I. Factual and Procedural Background

Chuck Esposito ("Esposito"), a detective with the Clearwater, Florida Police Department,

conducted an undercover child sexual abuse and pornography investigation by logging onto various

"chat rooms."[1]  Esposito represented himself to be a thirteen year old girl.  His screen name was StephieFL and the attached profile revealed, in part, his assumed identity as Stephanie, a single female from Clearwater, Florida, born on January 26, 1983.

On August 8, 1996, Esposito encountered Appellant, William R. Crow ("Crow"), in a "Pre-teen" chat room on the Internet.  Crow utilized the screen name VideoDom and his profile indicated that he was a male from Texas whose name was Bill.  Crow's profile on the Internet read:  "seeking young slender amateur women interested in making very explicit adult videos!"  His personal quote stated, "I am very $generous$ if you are good and nasty! Email me for an interview! I travel!"

During their first Internet encounter, Crow engaged StephieFL in sexually explicit conversations.[2]  He invited her to trade "nasty stuff" and wanted to know if she ever masturbated while looking at  sex pictures or discussing sex on the telephone.  When questioned whether girls the same age as herself posed for sex videos, Crow affirmed that they did and stated that he paid girls $300.00 to pose, masturbate and talk really nasty to him.  Crow further claimed that he would pay more if the girls actually engaged in sexual acts, including bestiality.  StephieFL responded that she did not think she had ever seen $300.00 and sought confirmation that Crow would actually pay.  Crow assured StephieFL that other girls had made videos of themselves and mailed them to him and that he is not actually present when the videos are made.  Crow emphasized that he paid because failure to pay could mean that he would "lose my girls and my sources . . .it [sic] not worth it to burn

[1]A chat room is a service provided by Internet service providers, such as America Online Inc., where individuals can correspond with each other simultaneously.

[2]The conversations that Crow had with StephieFL on the Internet are graphic and vulgar. This terminology is generally inappropriate for this Circuit's opinions. However, this Court feels that the facts must be shown as they were presented to the jury, which determined Crow's guilt, and the court, which determined Crow's sentence and ruled on other relevant legal issues.

a potential good girl for a few hundred dollars." StephieFL ended the conversation by claiming that her mother was yelling at her to help clean.

On August 8, 1996, another conversation via the Internet transpired in a similar fashion. Crow, still using the screen name of VideoDom, invited StephieFL to pose for photographs and videos. In response to StephieFL's question on how he wanted her to pose, Crow sent StephieFL a photograph of a prepubescent girl lying on her back spreading her labia, exposing her genitalia. When asked what else he was doing on the Internet, he responded that he was trading pictures of women sucking horses. He then sent a copy of the pictures to StephieFL. Crow indicated that he had other pictures: "Dogs, zebras, then I also collect lots of anal pics, facial cum shots, piss, poop, fisting, enema, huge toys in cunt and ass, you name it, I have it." Crow asked permission to call StephieFL to verify her identity. When she declined, he gave her a telephone number and hours during which she could call him. Crow asked StephieFL her age and she told him she was "13."

Crow sought to overcome all of StephieFL's reservations about producing such a video and photographs. In addition, Crow continued to seek voice verification. StephieFL requested more photographs which she received. The majority of the photographs featured prepubescent and pubescent girls in sexually explicit poses or engaged in sexually explicit activities, including sexual acts with dogs. Crow also provided StephieFL with instructions on how to encrypt and retrieve files. StephieFL offered numerous excuses for not calling Crow or not producing a tape. The excuses were usually centered around her parents or school. Crow, however, persisted and endeavored to overcome each excuse. Throughout their contact, which occurred via the Internet and e-mail, Crow continued to provide StephieFL with sexually explicit photographs of pre-pubescent and pubescent girls while requesting voice verification.

3

In late September of 1996, StephieFL had secured a mailing address and informed Crow that she had forwarded a video. A twenty-nine year old secretary for the Midland, Texas Police Department phoned Crow at his place of employment, identified herself and left a message for him. A receptionist left the message on Crow's desk. United States Postal Inspector Ron Massey arranged a controlled delivery of a videotape to Crow. The video tape, which Massey had received from the Dallas Police Department, presented a young female performing the type of sexually explicit conduct Stephanie had described recording for Crow. On September 30, 1996, Crow was arrested as he left the post office with the videotape.[3]

On October 17, 1996, the grand jury returned a six count indictment against Crow. Counts one, two and three charged him with interstate shipment of visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(1)(B). Count four charged attempted sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and (d), while count five charged Crow with receipt of interstate shipment of visual depiction of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2). Finally, count six alleged possession of three or more visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4).

At trial, Crow admitted to using the name VideoDom to send, via interstate commerce, the visual depictions of minors engaged in sexually explicit conduct as alleged in counts one, two and three. Crow also admitted to possessing three or more visual depictions of minors engaged in

---

[3]A subsequent search of Crow's office and house revealed a plethora of child pornography, adult pornography and bestiality, including the images appellant had sent to StephanieFL. Additional images were found depicting sexual bondage of children and sexual activity between men and young girls.

sexually explicit conduct as alleged in count six. Crow admitted guilt to those counts, but maintained his innocence with regard to counts four and five. A jury convicted Crow on all counts. O n September 11, 1997, Crow was sentenced to ninety-seven months imprisonment on counts one through five, and to a concurrent sixty months imprisonment on count six. A fine and supervised release were imposed. On September 19, 1997, the trial court entered its judgment. This appeal followed.

## II. Discussion

### a. Rule 11

Rule 11 of the Federal Rules of Criminal Procedure is triggered when the district court accepts a plea of guilty. *See United States v. Suarez*, 155 F.3d 521, 524-25 (5th Cir. 1998). Rule 11 establishes the procedure that a court must follow prior to accepting a plea of guilty. *United States v. Myers*, 150 F.3d 459, 464 n. 8 (5th Cir. 1998). The district court, however, is not under an obligation to accept a defendant's confession of guilt. *Lynch v. Overholser*, 369 U.S. 705, 719 (1962).

Rule 11 is designed to ensure that the plea is voluntary, accurate and properly recorded. FED.R.CRIM.P 11 (d), (f) & (g). "The court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, . . . the maximum possible penalty provided by law, . . . any special parole or supervised release term, . . . any applicable sentencing guidelines, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense." *Id.* at 11(c)(1). The district court must also inform the

defendant that any answers to questions posed by the court may be used against the defendant in a prosecution for perjury or false statement. *Id.* at 11(c)(5).

Crow argues that the district court failed to follow Rule 11's procedural prerequisites and that the failure to address Rule 11's "core concerns" requires an automatic reversal. Crow is incorrect. This Circuit has clearly established that Rule 11 challenges are reviewed under a harmless-error analysis. *Suarez*, 155 F.3d at 524. "Under the harmless-error analysis, this Court must determine (1) whether the sentencing court in fact varied from the procedures required by Rule 11 and (2) if so, did such variance affect the substantial rights of the defendant." *Id.* (citing *United States v. Johnson*, 1 F.3d 296, 298 (5th Cir. 1993) (en banc)).

At a pretrial motions hearing and during the subsequent trial, Crow admitted guilt to counts one, two, three and six, but maintained his innocence with regard to counts four and five. During the pretrial motions hearing, the prosecution objected to the acceptance of a plea of guilty because the effect would result in a severance of the counts and prevent the prosecution from presenting its case. The court agreed, and it was understood by the parties, that Crow would testify and admit guilt. The government, however, was required to present evidence supporting its entire case. Crow never requested rearraignment, Rule 11 proceedings on the counts at issue, or a severance of counts. The government did not offer a plea agreement for the court's consideration. In addition, the court at the beginning and end of trial, repeatedly instructed the jury on the presumption of innocence, the government's burden of proof, the pending charges, and the elements that the government was required to prove under each count of the six-count indictment. As required, the jury returned a verdict on each of the six counts of the indictment.

This Court finds that the facts in this case do not trigger Rule 11 considerations and

6

therefore we do not need to engage in a harmless error analysis. Rule 11 was not triggered because the district court never accepted a plea of guilty from Crow. Instead, the district court submitted the issue of guilt as to counts one, two, three and six to the jury. The jury was required to make a finding of guilt beyond a reasonable doubt for each count. Had the court accepted Crow's confession of guilt as a "plea of guilty," it is obvious that it would not have submitted the issue of determining Crow's guilt on all of the counts to the jury.

The government asserts that although Crow never specifically requested a severance, his rearraignment and the court's acceptance of a guilty plea on some of the charges in the indictment would have forced a severance of counts. Therefore, the government maintains that we should apply an abuse of discretion standard to the district court's refusal to sever the counts.

The government is correct in noting that a refusal to sever counts is reviewed only for an abuse of discretion. *United States v. Fisher*, 106 F.3d 622, 631 (5th Cir. 1997). We agree with the government that an abuse of discretion is the proper standard of review under the specific facts of this case. Moreover, we hold that the district court did not abuse its discretion because Crow failed to assert any ground for severance. *United States v. Ballis*, 28 F.3d 1399, 1408 (5th Cir. 1994). Furthermore, we find that Crow has failed to demonstrate specific and compelling prejudice because he was not held to any of his statements by the court or the prosecutor. This is because the government was required to prove all of the elements of the six charges, the court instructed the jury on the specific elements of all of the charged offenses, and the jury was asked to return a verdict on all of the charged offenses.

#### b. *Motion to Quash Count Four*

7

We review a district court's ruling on a motion to quash for an abuse of discretion. *In re Grand Jury Proceedings*, 115 F.3d 1240, 1243 (5th Cir. 1997). In addition, this Court reviews the sufficiency of an indictment *de novo*. *United States v. Cluck*, 143 F.3d 174, 178 (5th Cir. 1998).

Crow claims that the allegation charged in count four of the indictment did not satisfy the minimum constitutional requirements because: (1) it failed to state an offense under 18 U.S.C. § 2251; and (2) it failed to state an essential element of the crime requiring that the person exploited through various means must be a "minor." Crow, in challenging the sufficiency of the indictment, focuses on the indictment's phrase "a person whom the defendant believed was a 13 year old female." He contends that the statute requires that the individual exploited or that the defendant attempted to exploit had to actually be a minor.

Section 2251(a) prohibits:

(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (d), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

Subsection (d) provides punishment for "[a]ny individual who violates, or attempts or conspires to violate" this section.

Crow contends that section 2251 should be interpreted to require the individual involved to actually be a minor female, and not merely a person believed to be a minor female. Crow asserts that the indictment is insufficient because the statutory language provides that the person must be a minor and the indictment fails to reflect the statute's intent.

8

Rule 7 of the Federal Rules of Criminal Procedure requires that an indictment be a "plain, concise and definite written statement of the essential facts constituting the offense charged." In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated. *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998). The purpose of an indictment is to inform a defendant of the charges against him and set a predicate for a subsequent invocation of the double jeopardy clause. *United States v. Devoll*, 39 F.3d 575, 578 (5th Cir. 1994), *cert. denied*, 514 U.S. 1067 (1995). The test for the validity of an indictment is "not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Cluck*, 143 F.3d at 178 (internal citation omitted). Although an indictment must allege each and every element of an offense, "the law does not compel a ritual of words." *Devoll*, 39 F.3d at 579. The validity of an indictment is governed by practical, not technical considerations. *Id.*

The proper test for determining the validity of the indictment is whether or not the defendant has been prejudiced by the alleged deficiency. *United States v. Steen*, 55 F.3d 1022, 1026 (5th Cir.), *cert. denied*, 516 U.S. 1015 (1995). This Court finds that Crow did not allege, show or suffer prejudice. The allegation charged in count four of the indictment apparently satisfies the minimum constitutional requirements. Moreover, Crow never claimed to be unaware of the government's theory of the case, the nature of the charges against him or that the indictment in some way failed to protect him from future prosecution. In addition, the indictment was sufficiently detailed and clearly presented the charges. Therefore, we hold that the district court did not err by refusing to quash count four.

### c. Jury Instructions

Crow challenges the jury instructions on three grounds: (1) attempt in count four; (2) the *mens rea* and scienter elements in count four; and (3) the scienter element in count five. We will address each of these issues individually.

### Standard of Review

Crow objects to the jury charge for the first time on appeal. Consequently, because no objection was raised below, this Court applies a plain error standard. FED. R. CRIM. P. 52 (b); *see Devoll*, 39 F.3d at 579. A plain error must be obvious and clear under current law, affect a substantial right and result in prejudice to the defendant. *United States v. Calverley*, 37 F.3d 160,163-64 (5th Cir. 1994), *cert. denied*, 513 U.S. 1196 (1995). The burden of persuasion lies with the appellant; therefore, no remedy is available absent a showing that a substantial right has been compromised. *Id.* Once an error has been presented to the court, the court may nevertheless decline to correct the error. *Id.*

### Instruction on Attempt

This Court has adopted a two part test to determine if a defendant is guilty of an attempted crime. *See United States v. August*, 835 F.2d 76, 77 (5th Cir. 1987). First, the defendant must have been acting with the kind of culpability otherwise required for the commission of the crime which he is charged with attempting. Second, the defendant must have engaged in conduct which constitutes a substantial step toward the commission of the crime. *Id.* (citing *United States v. Mandujano*, 499 F.2d 370, 378 (5th Cir. 1974), *cert denied*, 419 U.S. 1114 (1975)). A substantial

10

step is conduct strongly corroborative of the firmness of the defendant's criminal intent. *August*, 835 F.2d at 77.

Crow complains that the district court: (1) did not explain to the jury the law of attempt; (2) failed to explain the difference between mere intent to commit a specific crime and attempt to do so; (3) neglected to instruct on the language concerning a substantial step; and (4) incorrectly stated the criminal charge and the elements that the government needed to prove as to count four. Crow argues that these errors constitute clear error.

We find this Court's analysis in *United States v. Contreras*, 950 F.2d 232, 237 (5th Cir. 1991), *cert. denied*, 504 U.S. 941 (1992), illuminates the course we should follow in the case at bar. In *Contreras,* we held that "factual impossibility is not a defense if the crime could have been committed had the attendant circumstances been as the actor believed them to be." *Id*. at 237; *see also United States v. Greer*, 158 F.3d 228, 239 n. 6 (5th Cir. 1998)(noting that factual impossibility is not a defense to a charge of attempt). As in *Contreras*, this Court holds that factual impossibility is not a defense to attempt in this case.

This Court finds that there was no plain error. Thus, a miscarriage of justice did not result from the failure to include "attempt" language in the jury charge and the substantial evidence supporting the jury's finding of guilt beyond a reasonable doubt was not overcome. Therefore, we hold that the jury instruction, with regard to attempt, was not fundamentally defective. Crow was properly convicted of attempt because he undoubtedly believed that the person he was corresponding via the Internet was a minor.

### Instruction on Count Four

11

Crow argues for the first time on appeal, that the court's instruction on the scienter and *mens rea* elements of section 2251(a) and (d) in count four were inadequate and resulted in plain error. Crow contends that the government was required to show that he actually "knew" that StephieFL was a minor, rather than instructing the jury that it was permitted to convict him if they found he simply "believed" that StephieFL was a minor. Crow asserts that plain error exists because the court failed to instruct the jury on one of the elements of the crime.

Crow asserts that *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), requires both *mens rea* and scienter elements as to age; otherwise section 2251 should be declared unconstitutional for lack of a scienter element. The government maintains that Crow's construction of section 2251(a) is erroneous. We find that the government's contention is correct.

In *United States v. United States District Court for the Central District of California*, 858 F.2d 534, 538 (9th Cir. 1998), the Ninth Circuit held that under section 2251(a), "a defendants's awareness of the subject's minority is not an element of the offense." The Supreme Court agreed in *X-Citement Video, Inc.*, 513 U.S. at 76 n.5, where it concluded that producers may be convicted under section 2251(a) without proof that they had knowledge of age. Moreover, Crow's assertion that section 2251(a) is unconstitutional because it lacks a scienter requirement is meritless. The statute requires proof that the persuasion or inducement of the minor was done so "with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct" and requires proof of a defendant's knowledge that the visual depiction would be transported in interstate or foreign commerce or mailed. In addition, the constitutionality of section 2251(a) has been challenged, upheld and affirmed. *See Gilmour v. Rogerson*, 117 F.3d 368 (8th Cir. 1997), *cert denied*, 118 S.Ct 1066 (1998). Therefore, we find that there was no plain error

12

and that the jury was properly instructed.

### *Instruction on Count Five*

Crow contends that the district court plainly erred in failing to properly and adequately instruct the jury on the scienter element in count five in violation of his Fifth and Six Amendment rights. Count five alleged a violation of 18 U.S.C. § 2252(a)(2), which makes it a crime to knowingly receive any visual depiction of a minor engaged in sexually explicit conduct via interstate commerce. Crow asserts that the court failed to instruct the jury that he must have known that the individual depicted was a minor as shown in *X-Citement Video, Inc*., 513 U.S. at 78. In *X-Citement Video, Inc*., the Supreme Court determined that the use of the term "knowingly" in section 2252 requires proof of the defendant's knowledge that the individual depicted was a minor. *Id.* Moreover, Crow notes our decision in *United States v. Kimbrough*, 69 F.3d 723 (5th Cir 1995) , *cert. denied*, 517 U.S. 1157 (1996), where we approved the submission of instructions regarding a violation of section 2252(a). In *Kimbrough*, those instructions required the jury to find beyond a reasonable doubt "that the defendant knew that at least one of the performers in such visual depiction was a minor." *Kimbrough*, 69 F.3d at 733. Crow asserts that the district court's failure to submit instructions analogous to those in *Kimbrough* resulted in plain error. His rationale is that the jury could have believed Crow's testimony, yet it would have been powerless to find in his favor because the issue of "lack of knowledge" was improperly presented to the jury for consideration and review.

The government concedes that the jury instructions could have been crafted with greater precision thereby requiring that Crow "knew" that the individuals depicted in the pornography were minors. It argues, however, that the instruction does not rise to the level of plain error. The

13

government cites two other circuits in supporting this assertion.. *United States v. Gendron*, 18 F.3d 955 (1st Cir.), *cert. denied*, 513 U.S. 1051 (1994); *United States v. Cedelle*, 89 F.3d 181 (4th Cir. 1996).

In *Gendron*, the charge required that the jury find that the defendant "knew the character and nature of the material." *Gendron*, 18 F.3d at 967. The defendant argued that the court's failure to specifically instruct the jury that it had to find that the person depicted was under the age of 18 was plain error. *Gendron*, 18 F.3d at 967-68. The court rejected the defendant's argument and concluded that because the remainder of the charge referred frequently to children, the jury in all likelihood understood that the word "knew" encompassed age as well as explicit sexual acts. *Id.* at 968.

The government asserts that in this case, as in *Gendron,* the jury was fully aware that the issue was child pornography because the charge repeatedly refers to minors, and the pornography at issue primarily and obviously depicted children. In addition, it asserts that Crow admitted to knowingly possessing and sending photographs depicting children to StephieFL. Moreover, the computer correspondence  demonstrated that Crow desired to receive a videotape of  thirteen-year-old StephieFL engaging in sexually explicit conduct. The government notes that while the issue is whether Crow knew that the tape depicted minors, the evidence is so overwhelming on this point that it is unlikely that the jury misconstrued the statute and found Crow guilty on an improper theory.

In *Cedelle*, the Fourth Circuit addressed a plain error review of an instruction that affirmatively removed from the jury's consideration knowledge of the minority of the victim. The court found plain error affecting the defendant's substantial rights but exercised its discretion by not correcting the error because the evidence supported the conclusion that the depicted persons were

14

minors. Cedelle never argued to the contrary.

The government asserts that in this case the issue was not removed in its entirety from the jury's consideration and, although Crow contended he did not know what to expect when he picked up the videotape, the error need not be corrected because evidence to the contrary was so overwhelming. This Court agrees with the government. Therefore, we do not find plain error in the court's instructions to the jury.

### d. Sufficiency of the Evidence, Counts Four and Five

In evaluating the sufficiency of the evidence, our standard of review is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Greer*, 137 F.3d 247, 249 (5th Cir.), *cert. denied*, 118 S.Ct. 2305 (1998). We view the evidence in the light most favorable to the government. *Id.*

Crow asserts identical arguments to those raised in his challenge to the jury instructions. With regard to count four, which charged Crow with attempting to violate section 2251(a) and (d), he challenges his intent to commit the offenses and denies ever believing that StephieFL was a minor. Similarly, Crow challenges count five, which charged a violation of section 2252(a)(2) by asserting that the evidence was insufficient to demonstrate his knowledge of the minority of the individual depicted in the video. We find Crows contentions to be unpersuasive. The facts and information presented to the jury clearly supports Crow's conviction.[4] Crow's arguments presented to this Court

---

[4]Crow's initial contact with StephieFL occurred in a "Pre-teen" chat room and his profile indicated he was seeking a "young slender amateur women interested in making very explicit adult videos." Therefore, the jury could have inferred that Crow was indeed looking for a pre-teenaged

derive from not legal, but factual impossibility.  Therefore, *Contreras* is applicable and his request

for relief must be denied.


### *e.  Calculation of Sentence*

### *Standard of Review*

We review the trial court's application of the sentencing guidelines *de novo* and findings of

fact under a clearly erroneous standard.  *United States v. Lucas*, 157 F.3d 998, 1000 (5th Cir. 1998).

---

girl with whom he could form a relationship of the type he had with StephieFL.  In addition, because StephieFL's profile and her own words specifically informed Crow of her age, the jury could have inferred that he knew that she was only 13 years old.  Crow's correspondence illustrated his experience with soliciting child pornography, sex with children and soliciting videos made by children. Crow admitted he sent approximately 80 visual depictions of minors engaged in sexually explicit conduct to StephieFL.  Along with each transmission, Crow represented to StephieFL that they were examples of what she could do in the photos or videos she made for him of herself.  Crow inquired about the sexual acts they could perform together, and his comments were inappropriate if he was having a discussion with a man.  Crow's advice to StephieFL about sex: "guys like nasty girls the best (don't believe what mom says)!!!" reveals his knowledge, intent and belief that he was conversing with a minor.  A rational trier of fact could conclude that if Crow was playing a fantasy game with an experienced adult male, there would have been no reason to provide StephieFL with instructions on how to produce a video, manage compressed and encrypted files and to mail the finished product.

When StephieFL failed to provide the video he requested, he said, "I just need to concentrate my time and efforts on girls who actually perform for me and not just make promises."  Crow requested that StephieFL perform certain acts on the video but also requested that she talk nasty to him and "use my name a lot."  When she told Crow she made the video, he told her he would give her pointers on how to improve her camera work.  Crow also said, "Hopefully you get really slutty for me.  I (like most men) really like that in women and young girls."  A jury could easily find that if Crow did not believe, or intend that StephieFL would produce a video for him, then there would not have been any reason to make these comments.

After receiving a message that "a lady named Stephanie called" and only minutes before he picked up the videotape, Crow told StephieFL that it would be "Hot" and that he would masturbate as he watched it.  It is evident that a jury could conclude that Crow's claim that he was playing a fantasy game and that he did not know that he was dealing with a child is not credible in light of his actual statements in the computer correspondence and the fact that he left moments later to retrieve the video from the post office.

16

*Calculation of Guidelines for Count Four*

Crow argues that the district court erred in its calculation of the guidelines in assigning a base level of 25 to count four. Crow maintains the error occurred because U.S.S.G. 2G2.1 and its specific offense characteristics were inapplicable since the offense did not actually involve a minor. The government correctly asserts that this argument again relates to a factual impossibility defense, which does not provide a defense to the application of sentencing adjustments. *See Contreras*, 950 F.2d at 237.

*Application of Adjustment for Distribution*

Crow asserts that the sentences for counts one, two, three and five were improperly calculated because the district court granted his objection to the addition of five points for distribution, however, the points were factored into the offense level. Nevertheless, the government correctly notes that the record clearly demonstrates that Crow did receive the benefit of the adjustment. Following the submission of Crow's objections, the probation officer submitted a revised report addressing the changes. The probation officer found meritorious an objection to an adjustment for distribution of the pornography. The revised pre-sentence report then reflected that change and was submitted and relied upon by the district court.

*Acceptance of Responsibility*

Crow contends that he was entitled to a reduction in points based on acceptance of responsibility since he made it clear that he intended to plead guilty to counts one, two, three and six. Crow states that his communication and testimony provided a benefit to the trial court. This Court

17

"reviews a district court's finding on acceptance of responsibility for clear error but under a standard of review even more deferential than a pure clearly erroneous standard." *United States v. Garcia*, 135 F.3d 951, 956 (5th Cir.), *cert. denied*, 118 S.Ct. 2386 (1998). We find that both the jury and the court properly rejected Crow's persistent attempt to minimize his conduct and his intent. Similarly, Crow forced a trial on the most serious counts, which itself can preclude any reduction for acceptance of responsibility. *United States v. Lister*, 53 F.3d 66, 72 (5th Cir. 1995)(finding no acceptance of responsibility where defendant went to trial and pled guilty after closing arguments). Therefore, the district court did not err in its decision.

### *Downward Departure*

Finally, Crow maintains that the district court erred in refusing to grant his requests for downward departure based upon his post-offense rehabilitation efforts under U.S.S.G. § 3E1.1 and his diminished mental capacity. Crow states that his diminished mental capacity was his compulsion for adult pornography as opposed to child pornography and his addictive behavior. Furthermore, Crow asserts that the district court was empowered to grant these downward departures but declined to do so under the mistaken belief that it did not have the legal authority to do so.

This Court generally will not disturb the sentencing court's discretionary decision not to depart downward from the guidelines. *United States v. Soliman*, 954 F.2d 1012, 1014 (5th Cir. 1992). Only if the district court mistakenly believed that the departure was not permitted will this Court review a refusal to grant a downward departure. *Id.*

The district court denied Crow's request for a downward departure based upon his mental capacity by saying, "I also do not grant a downward departure for diminished mental capacity." In

18

addition, the pre-sentencing report specifically recognized diminished mental capacity as a valid ground for departure.

In denying Crow's request for downward departure based upon his post-offense rehabilitative efforts the court stated "I don't find that what you did would allow for a downward departure and so I do not grant a downward departure for remorse and rehabilitative efforts and that motion's overruled." We find that this statement is indicative of the trial court's awareness of its authority to permit a departure and it decision to decline to do so.

Therefore, we will not disturb the district court's discretionary decision to deny Crow's requests for downward departure.

### III. Conclusion

For the aforementioned reasons we find that the district court was correct in all respects. Accordingly, the district court's decision is hereby AFFIRMED.